OPINION OF THE COURT
James C. Tokmey, J.
This matter having come before this court by notice of motion dated January 6, 2015, and verified and filed by Mental Hygiene Legal Service on behalf of respondent, Glenn T., on January 6, 2015, seeking that the court vacate the court’s decision and order of May 13, 2014 finding mental abnormality, and the July 15, 2014 amended decision and order directing confinement of the respondent, as a matter of law based upon the Court of Appeals’ October 28, 2014 decision in Matter of State of New York v Donald DD. (24 NY3d 174 [2014]). On February 13, 2015, the Attorney General’s Office, on behalf of the petitioner, objected to this motion by affirmation in response to respondent’s motion. On March 3, 2015, a reply affirmation in support of motion dated March 2, 2015 was submitted by Mental Hygiene Legal Service on behalf of respondent, Glenn T. On March 13, 2015, the Attorney General’s Office, on behalf of the petitioner, submitted a surreply to the respondent’s reply affirmation in support of motion dated March 12, 2015. On March 26, 2015, the court heard oral arguments with all parties present. The court made a finding as to its jurisdiction over this case and entered an amended decision and order dated March 26, 2015.
Jurisdiction of the Court
At oral argument, the court again heard from both parties regarding the jurisdictional determination made by this court that the court hearing these matters has the inherent authority at any time in a proceeding, under Mental Hygiene Law article 10, to make a determination as to whether or not a person continues or does not continue to have a “mental abnormality” as defined by Mental Hygiene Law article 10. The court, in the amended decision and order on jurisdiction, dated March 26, 2015, set forth that courts which are reviewing Mental Hygiene Law article 10 matters have the inherent *523 authority over all matters under Mental Hygiene Law article 10 after a person has been determined to have a “mental abnormality” as defined by Mental Hygiene Law article 10. The statute explicitly sets forth in the second sentence of section 10.09 (h) that “otherwise the court, unless it finds that the respondent no longer suffers from a mental abnormality, shall issue an order providing for the discharge of the respondent to a regimen of strict and intensive supervision and treatment.” This court reiterates its belief that the legislative intent, as set forth in the statute, was crystal clear that under Mental Hygiene Law article 10 the court has the inherent authority for judicial review if there is cause to believe the respondent does not have a “mental abnormality.” Trial courts are the only avenues available (for respondents) to redress a designation of “mental abnormality.” The Attorney General’s Office continues to request a hearing under Mental Hygiene Law, article 10, § 10.09 as set forth in the statute. However, this court is relying on the language in Mental Hygiene Law, article 10, § 10.09 (h), which provides that the courts have the ability to release someone who does not have a “mental abnormality.” When the only issue is whether, as a matter of law, the respondent was incorrectly found to have a “mental abnormality,” only the review of evidence at the original trial is necessary. No additional hearing should be granted. To do otherwise would leave no remedy for the respondent, and would be contrary to the legislative intent.
Motion before the Court
The respondent is seeking to have this court vacate its decision and order dated May 13, 2014 from the original trial in this matter, which found “mental abnormality” of the respondent. Respondent cites Matter of State of New York v Donald DD. (24 NY3d 174 [2014]), where the Court of Appeals squarely decided the issue as to whether or not a civil commitment under Mental Hygiene Law article 10 may be based solely on a diagnosis of antisocial personality disorder (hereinafter referred to ASPD), with the only other evidence presented being previous convictions of sexual crimes. The Court held that Donald DD.’s ASPD diagnosis alone was insufficient to establish a “condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct.” {Id. at 190-191 [emphasis *524 omitted].) The Court concluded that “an ASPD diagnosis has so little relevance to the controlling legal criteria of Mental Hygiene Law § 10.03 (i) that it cannot be relied upon to show mental abnormality for article 10 purposes.” (Donald DD. at 190.) In clarifying, the Court found that ASPD is not “in itself an unreliable diagnosis.” (Id. at 191.) Rather, the Court found that “the problem is that ASPD establishes only a general tendency toward criminality, and has no necessary relationship to a difficulty in controlling one’s sexual behavior.” (Donald DD. at 191.)
Therefore, in each case that is brought before this or any other court for review after there has been a finding of “mental abnormality,” based upon the determination of Donald DD., the court must review the evidence of each particular case and those particular circumstances to make a finding of whether or not to vacate the order based on the lack of supporting evidence to provide for a “mental abnormality.”
Previous Trial Findings, Testimony and Evidence Presented
Turning to the matter herein, this court previously, in its decision and order dated May 13, 2014, found that the respondent, Glenn T., was a detained sex offender who suffers from a “mental abnormality” as defined by Mental Hygiene Law, article 10, § 10.03 (i), and that the respondent was a sex offender who has a congenital or acquired condition, disease or disorder, that affects his emotional, cognitive and volitional capacity in a manner that predisposes him to the commission of conduct constituting a sex offense that results in his having serious difficulty controlling such conduct, and accordingly, he requires civil management under Mental Hygiene Law article 10.
At trial, the State’s expert, Dr. Stuart Kirschner, testified that he reviewed substantial records of the respondent, including but not limited to records from probation agencies, correction facilities, police departments, psychiatric facilities and the Federal Bureau of Investigation regarding his criminal, mental and institutional history. Dr. Kirschner also reviewed various reports from Office of Mental Health employees, case review teams, and scoring reports from testing instruments. Dr. Kirschner testified that most of those reports were made in the course of business, and tracked the history of Mr. T. from his youth going back to psychiatric centers, where he was admitted as a child, which provided the doctor with a chronology of events to arrive at his conclusions. This included a personal interview with the respondent.
*525 Dr. Kirschner testified that on September 12, 2013, at the Midstate Correctional Facility, he interviewed respondent Glenn T., who was arrested for and convicted of rape in the third degree of a 15 year old who was a chronic runaway. Apparently, the victim had been receiving phone calls from a person who identified himself as “P” (whose nickname was Python), and that on one occasion, the victim slipped out of a window of her residence and went to a motel room where she engaged in sexual relations with the respondent, Glenn T. Respondent then held her at that hotel room and subsequently at a friend’s house for approximately one week, threatening her by stating to her that she could not leave, giving the victim alcohol and other substances, holding her captive and repeatedly sexually abusing her. Dr. Kirschner testified that police records indicated that respondent Glenn T. also threatened the victim with a knife. Respondent denied the use of a knife, and indicated the victim was there voluntarily. That arrest resulted in a conviction, with a prison sentence of 4 to 8 years.
Dr. Kirschner testified that in 1991, the respondent, Glenn T., had a relationship with a 14-year-old girl, who was the girlfriend of the respondent’s brother, Tony. When the respondent’s girlfriend, with whom the young girl was staying, went to bed the respondent had sexual relations with the victim who was learning disabled, who previously left her home as a runaway. The reports indicated that respondent, Glenn. T., had threatened the victim with a knife and forced himself on her, and asked or told her that he wanted her to work for him as a prostitute. Respondent denied these allegations, however, Dr. Kirschner testified that the respondent’s stories were not consistent. The respondent was arrested for rape in the first degree and sexual abuse in the first degree, resulting in a conviction of sexual abuse in the first degree. Respondent was subsequently sentenced to 2 to 4 years’ incarceration.
In 1994, the respondent, Glenn T, was again charged with the sexual offenses of sodomy and rape in the first degree, and sexual abuse in the first degree. The respondent was convicted of sexual abuse in the first degree and sentenced to 3 to 6 years’ incarceration. Dr. Kirschner testified that the respondent, Glenn T., had been on parole for less than one month at the time of that offense. According to the records, the victim was the respondent’s previous girlfriend, and was pregnant at the time of this offense.
Dr. Kirschner testified that in addition to the 1991 and 1994 sex offense convictions, the respondent indicated during his *526 interview that he had an incident in 1989 when he was in his 20s with a 13-year-old girl he had impregnated. There was no indication that the respondent was convicted of anything related to that incident.
Dr. Kirschner stated that he utilizes the Diagnostic and Statistical Manual, 5th Edition (DSM-5), to provide for classification of different mental diseases or disorders. Dr. Kirschner testified that the term “mental abnormality” is a legal term and not a psychological term. He stated that the respondent, Glenn T., had a diagnosis of substance abuse, which is in institutional remission, and that he has a borderline personality disorder and an antisocial personality disorder. The major components of these diagnoses are the irritability, aggressiveness, lack of control, and disregard for the safety of others, and that these components manifested themselves in the respondent, causing the respondent to have a lack of conscience.
Dr. Kirschner testified that the respondent clearly has an interest in adolescent females, he exploits vulnerable adolescent females and is predisposed to sexually offend against them. He testified that antisocial and borderline elements fit into the difficulty of the respondent in controlling his impulses, which makes the respondent predisposed to committing these offenses. Dr. Kirschner testified that the respondent has shown no remorse for his behaviors and crimes that he does not have a realistic plan should he be released into the community, and that he has violated parole on at least three occasions. Dr. Kirschner testified that while in the custody of the Department of Corrections and Community Supervision (hereinafter DOCCS), according to records, the respondent masturbated in the presence of a female teacher. He stated while respondent was in the custody of DOCCS in his first term of incarceration, he had approximately 15 tier tickets (tier tickets are issued by DOCCS to an inmate for violation of rules of conduct), and in his second term of incarceration he had approximately 17 tier tickets. The respondent had also been cited for writing letters to another male inmate soliciting sexual favors from the inmate, and he was caught with pornography, which was in his possession during the time he was attending a sex offender treatment program which he did not complete.
Dr. Kirschner testified that the respondent’s inability to control his sexual impulses is further supported when he had sexual fantasies and urges toward a male inmate, then sent a letter to the male inmate with explicit detail of his desires. Dr. *527 Kirschner testified that the respondent has a predisposition for committing sexual offenses, and has serious difficulty controlling his behavior. When asked to explain the respondent’s general pattern of criminality based upon his arrest pattern, which spreads across a wide variety of criminal offenses rather than a tendency toward one type of criminal behavior, Dr. Kirschner stated that the respondent displays “criminal versatility.” Dr. Kirschner testified that the respondent’s DOCCS behavioral history shows multiple tier tickets with only one or two of those being for sex offenses. When questioned about the respondent’s low number of tier tickets for sex offenses while incarcerated, Dr. Kirschner explained that the respondent does not have access to his “victim pool,” which for the most part is adolescent girls, especially those who are vulnerable. The respondent cannot act on the urges he has acted on while in the community, because he does not have access to those potential victims while incarcerated. Dr. Kirschner testified that though the respondent is criminally versatile, he has sexual preferences within a certain population, which provide a certain excitement and gratification that the respondent derives from those potential victims.
Dr. Kirschner testified that according to records, the respondent, Glenn T, had enrolled in the sex offender treatment program two or three times, but never completed the program.
Dr. Kirschner also testified that he reviewed a psychopathy checklist/revised (PCL-R) test, which is an indicator for general recidivism not for recidivism of sex offending. After reviewing all of these records, and based upon his interview with the respondent, Dr. Kirschner testified within a reasonable degree of professional certainty, the respondent, Glenn T., has a mental disease/disorder that results in him having a serious difficulty in controlling his behavior, and that he has a “mental abnormality” as defined by Mental Hygiene Law article 10, § 10.03 (i). No other witnesses were called by the petitioner or by the respondent regarding this matter.
Review and Analysis
In the matter before this court, the respondent argues that the evidence provided at trial, which dealt with the expert’s testimony and diagnosis of the respondent having ASPD, combined with substance abuse and borderline personality disorder, is not enough to establish a “mental abnormality.”
The petitioner argues that paraphilia is not required to make a finding of “mental abnormality.” They argue in this case that *528 the respondent’s preoccupation with sex, having 60 or 70 partners, trading sex for drugs, admitting that sex is a coping device for him, and the respondent’s sexual impulsivity are additional factors for antisocial personality disorder. The petitioner argues that the two separate diagnoses, borderline personality disorder and ASPD, are different in nature. While ASPD is found in a majority of prisoners, borderline personality disorder is found in far fewer prisoners, and can be utilized as a factor in determining whether the respondent suffers from a “mental abnormality” as defined in Mental Hygiene Law article 10. The State argues that a diagnosis of ASPD needs only to be accompanied by “evidence of some independent mental abnormality diagnosis.” (Donald DD. at 191.)
This court has reviewed the record, testimony, reports and evidence from the first trial in this case, and from that review, the court finds that the respondent developed an established pattern of sexual offending, demonstrating his strong predisposition to offend. In addition to the repeated commissions of sexual offenses, the respondent had violated parole on at least three occasions, and as Dr. Kirschner has testified, this behavior demonstrates his serious difficulty controlling his behavior in the community. Dr. Kirschner also described the respondent’s difficulty in controlling his behavior even while incarcerated in DOCCS custody. Dr. Kirschner testified that the respondent was observed masturbating in public in front of a teacher, and that he received a tier violation ticket for writing emails to an inmate soliciting sexual favors. Dr. Kirschner also testified that while in the sex offender treatment program, the respondent received a tier ticket for possessing pornography. Dr. Kirschner concluded from that evidence of the respondent’s behavior, while incarcerated, demonstrated an inability to control his sexual impulses. Dr. Kirschner explained how each diagnosis he attributed to the respondent was directly linked to his pattern of sexual offending. Dr. Kirschner identified the respondent’s behavior and provided significant detail and analysis of the facts and circumstances evidencing how the respondent’s condition, disease or disorder caused serious difficulty in control. Dr. Kirschner testified that
“Mr. [T] basically has an antisocial orientation. And the major component here is an irritability, aggressiveness, lack of control, disregard for the safety of others. This is manifested in him having a lack of conscience. From the record, it had become *529 clear that he has an interest in adolescent females. And so he exploits vulnerable adolescent females, and he is predisposed to sexually offending against them. Where the antisocial and borderline elements fit in is that he has difficulty controlling his impulses. He may understand at some level that this is wrong. Now either he can’t control the urges, or he doesn’t care about the consequences or a combination of both. That’s where the personality disorder elements come in. An adult male could have sexual urges toward an adolescent female but not act on it because he has the ability to control those urges, and he’s aware and cares about the consequences and has a conscience about it. So on the one hand another person may have the same ideas but not act on it, but because of the antisocial borderline traits, it makes Mr. [T] predisposed to committing these offenses.”
Dr. Kirschner, when asked on cross-examination, “and while it is true that the use of alcohol or drugs may lower one’s inhibitions, doesn’t the American Psychiatric Association say there is no connection between drug and alcohol consumption and sex offender behavior for someone without a paraph [i] lia?”, responded “well, that’s right but that is not the case with Mr. [T] There is a direct relationship between his use of substances and offending.”
Dr. Kirschner responded when asked, “do you need to have a paraph[i]lia finding to have a mental abnormality?”, “No, in fact the definition of mental abnormality does not mention the diagnostic and statistical manual anywhere, so technically, a person doesn’t have to have any diagnosis at all according to the manual.” Dr. Kirschner’s testimony concluded that the respondent suffered from multiple conditions, diseases and disorders, in addition to ASPD, which includes multiple sexual offenses and unmanaged sexual behaviors, even while incarcerated. The additional conditions, diseases and disorders assigned to the respondent by Dr. Kirschner are specifically substance abuse disorder and borderline personality disorder, which are described in the DSM-5 and are clinically significant to Dr. Kirschner’s finding of mental abnormality. As can be seen from a review of Dr. Kirschner’s testimony, as stated herein, these diagnoses and conditions explained the respondent’s predisposition to commit sex offenses and his serious difficulty in controlling his behavior.
*530 Conclusion
To this court, respondent’s past behaviors demonstrate both his predisposition and inability to control his sex offending behaviors. From the records and testimony presented, there is ample evidence beyond the sole diagnosis of ASPD and the commission of a sex offense, to support a finding of “mental abnormality,” as defined by article 10 of the Mental Hygiene Law, and to comply with the decision in Donald DD., as testified to by Dr. Kirschner.
Respondent was diagnosed with multiple conditions, diseases or disorders, which in combination, when considered with his established multiple sexual offenses against young girls and his lifetime of inappropriate behaviors and actions, even while in prison, reveal a “detailed psychological portrait” of an individual suffering from a mental abnormality. The court is compelled once again to conclude that the respondent, at the time of trial, suffered from a “mental abnormality” and his disorder predisposed him to commit sexual offenses, which leads him to having a serious difficulty in controlling his behavior. At the time of trial, respondent had a congenital or acquired condition, disease, or disorder, that affected his emotional, cognitive and volitional capacity in a manner that predisposed him to the commission of conduct constituting a sex offense that results in his having serious difficulty controlling such conduct, which required civil confinement under Mental Hygiene Law article 10.
This case is distinguished from the matter of Donald DD. on its facts. In Donald DD., the sole diagnosis of Donald DD. was his ASPD and previous conviction of sex crimes. In this case, as set forth above, in addition to anti-personality disorders, respondent has borderline personality disorder; he has a diagnosis of substance abuse; he has irritability, aggressiveness, lack of control and disregard for the safety of others, which manifests in the respondent having a lack of conscience; he has an interest in adolescent females and exploits vulnerable adolescents, and is predisposed to sexually offending against them; he violated parole on three occasions; while in DOCCS, he has received numerous tier tickets, including offenses for soliciting sexual favors from an inmate, possession of pornography while in a sex offender treatment program, he did not complete two sex offender treatment programs, and was ticketed for masturbating in the presence of a female teacher. As stated above, there is ample testimony and evidence pre *531 sented supporting a finding that respondent has a condition, disease or disorder that affects his emotional, cognitive and volitional capacity, which predisposes him to commit a sex offense as defined in Mental Hygiene Law, article 10, § 10.03 (i) and leads to serious difficulty in controlling his sexual behaviors.
Therefore, based upon the foregoing, it is hereby ordered, that the respondent’s motion to vacate the decision and order of this court dated May 13, 2014 is dismissed in its entirety.