*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  August 13, 2015                    520794
_____

In the Matter of STATE OF
   NEW YORK,
                    Appellant,

        v                                      OPINION AND ORDER

RICHARD TT.,
                    Respondent.
_____

Calendar Date:   June 5, 2015

Before:  McCarthy, Egan Jr., Lynch and Devine, JJ.; Peters, P.J.,
         vouched in.

                        _____


        Eric T. Schneiderman, Attorney General, Albany (Allyson B.
Levine of counsel), for appellant.

        Sheila E. Shea, Mental Hygiene Legal Service, Albany
(Shannon Stockwell of counsel), for respondent.

                        _____


Devine, J.

        Appeal from an order of the Supreme Court (Krogmann, J.),
entered March 23, 2015 in Warren County, which, in a proceeding
pursuant to Mental Hygiene Law article 10, granted respondent's
motion to, among other things, vacate two prior orders of the
court.

        The underlying facts are also addressed in our prior
decision in this matter (127 AD3d 1528 [2015]).  Briefly,
respondent has a history of sexually inappropriate behavior and
was adjudicated a juvenile delinquent for his efforts to anally
rape two children, ages 5 and 8, when he was 12 years old.  In
2007, when he was 19, respondent was charged with various

offenses as a result of his forcible rape of one underage girl and engaging in sex with another. He pleaded guilty to rape in the third degree and sexual misconduct and was sentenced to an aggregate prison term of 1 to 3 years. As his release from prison neared in 2010, petitioner commenced this proceeding seeking a determination that respondent is a dangerous sex offender requiring civil management (see Mental Hygiene Law § 10.06 [a]). Respondent did not dispute that he suffered from numerous psychiatric disorders, including antisocial personality disorder (hereinafter ASPD), but argued that none of them constituted a "mental abnormality" that could subject him to confinement under Mental Hygiene Law article 10 (see Mental Hygiene Law §§ 10.03 [i]; 10.07 [a]). After a bench trial, Supreme Court issued an order finding respondent to be a detained sex offender suffering from a mental abnormality (see Mental Hygiene Law § 10.07 [a]). Supreme Court then conducted the dispositional phase of the trial and adjudicated respondent to be a dangerous sex offender requiring confinement (see Mental Hygiene Law § 10.07 [f]). Respondent appealed from that order.

While his appeal was pending, the Court of Appeals held that ASPD is a diagnosis with "so little relevance to the controlling legal criteria of Mental Hygiene Law § 10.03 (i) that it cannot be relied upon to show mental abnormality for [Mental Hygiene Law] article 10 purposes" (Matter of State of New York v Donald DD., 24 NY3d 174, 190 [2014]). Respondent accordingly moved to vacate the orders finding him to be a detained sex offender suffering from a mental abnormality and a dangerous sex offender requiring confinement, arguing that he could not be said to have a mental abnormality. Supreme Court in no way departed from its prior findings and expressed its continued belief that respondent suffered from a mental abnormality. Because it felt that Matter of State of New York v Donald DD. (supra) "require[d] a different conclusion," however, Supreme Court granted the motion and ordered that respondent be released from confinement. As a result, we dismissed the appeal from the confinement order on mootness grounds (127 AD3d at 1528). We are now asked to

resolve petitioner's appeal from the vacatur order.[1]

Petitioner initially asserts that the motion to vacate was procedurally inappropriate because respondent could obtain relief via other means. Respondent cited CPLR 4404 (b) and 5015 (a) as authority for his motion to vacate, and Supreme Court relied upon CPLR 5015 in granting it. The grounds for vacatur set forth in CPLR 5015 (a) are not exclusive, and "[a] court has the common-law authority to, in its discretion, grant relief from a judgment or order in the interest of justice, considering the facts of the particular case, the equities affecting each party and others affected by the judgment or order, and the grounds for the requested relief" (Hodge v Development at Helderberg Meadows, LLC, 114 AD3d 1122, 1123 [2014] [internal quotation marks and citations omitted]; see Nash v Port Auth. of N.Y. & N.J., 22 NY3d 220, 225-226 [2013]; Woodson v Mendon Leasing Corp., 100 NY2d 62, 68 [2003]). Given this authority, and noting that Supreme Court remained empowered to "entertain a motion to vacate its [orders] during the pendency of an appeal," we have no difficulty concluding that the motion to vacate was properly considered (Ruben v American & Foreign Ins. Co., 185 AD2d 63, 67 [1992]).

Turning to the merits, "[a] motion pursuant to CPLR 5015 to vacate a judgment or order is addressed to the trial court's sound discretion, subject to reversal only where there has been a clear abuse of that discretion" (Maddux v Schur, 53 AD3d 738, 739 [2008]; see Matter of McLaughlin, 111 AD3d 1185, 1186 [2013]). Petitioner argues that such an abuse of discretion is present here, as Matter of State of New York v Donald DD. (supra) did not compel the conclusion that respondent did not suffer from a mental abnormality. We agree that Matter of State of New York v Donald DD. (supra) did not warrant vacatur of orders that Supreme Court otherwise viewed to be supported by the evidence and, accordingly, reverse.

In order "[t]o demonstrate that respondent is a dangerous sex offender requiring civil confinement, petitioner was required

---

[1]  We granted petitioner's motion for a stay of the order pending appeal.

to prove 'by clear and convincing evidence that . . . respondent has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control [his] behavior, that [he] is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility'" (Matter of State of New York v Walter W., 94 AD3d 1177, 1178 [2012], lv denied 19 NY3d 810 [2012], quoting Mental Hygiene Law § 10.07 [f]; see Matter of State of New York v Barry W., 114 AD3d 1093, 1094 [2014]).  Respondent takes issue with the finding that he suffered from a mental abnormality, i.e., "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him . . . to the commission of conduct constituting a sex offense and that results in [his] having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]; see Matter of State of New York v Donald DD., 24 NY3d at 187).

Substantive due process requires that evidence of a mental abnormality reflect a "serious difficulty in controlling behavior" that, "when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, . . . [is] sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him [or her] to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case" (Kansas v Crane, 534 US 407, 413 [2002]; see Matter of State of New York v Donald DD., 24 NY3d at 189).  As such, "the New York statutory structure does not run afoul of substantive due process because it requires [petitioner] to prove that the individual is dangerous, and the dangerousness must be coupled with a mental abnormality, which – by definition – incorporates the additional requirement that the offender have serious difficulty with behavioral control" (Matter of State of New York v Frank P., 126 AD3d 150, 159 [2015]).  The Court of Appeals has determined that a diagnosis of ASPD, without more, does not meet that requirement, as it "establishes only a general tendency toward criminality, and has no necessary relationship to a difficulty in controlling one's sexual behavior" (Matter of State of New York v Donald DD., 24 NY3d at 191; see Matter of State of New York v Gen C., 128 AD3d 467, 467 [2015]).

With this legal framework in mind, we turn to the facts of the case before us.  Initially, while "a civil commitment under Mental Hygiene Law article 10 may [not] be based solely on a diagnosis of ASPD, together with evidence of sexual crimes" (Matter of State of New York v Donald DD., 24 NY3d at 189), respondent here was diagnosed with several mental disorders.  The psychologists who testified – Trica Peterson for petitioner and Erik Schlosser for respondent – were in agreement that he suffered from ASPD and borderline personality disorder (hereinafter BPD).  Those conditions result in emotional reactivity, aggressiveness and impulsivity, but neither necessarily result in a predilection to commit sex offenses.[2] Schlosser went on to note, however, that individuals suffering from BPD not only exhibit generalized impulsivity, but may specifically exhibit impulsive sexual behavior.  Moreover, Peterson diagnosed respondent as suffering from psychopathic traits, which she described as an extreme form of ASPD, and Supreme Court credited her testimony in that regard.  Peterson explained how those traits impacted her conclusions, noting that a psychopath such as respondent exhibits poor behavioral control and impulsivity that would further impair his decision making (cf. Matter of State of New York v Donald DD., 24 NY3d at 183 n 3).  Schlosser questioned the validity of any link between psychopathy and the risk of sexual reoffense, but even he acknowledged the existence of studies that drew such a link.  The trial evidence therefore reflected that respondent has a variety of disorders that can lead not only to a generalized willingness to commit crimes, but impulsive sexual behavior in particular.

The record is replete with proof that the diagnoses do, in fact, cause respondent to exhibit impulsive and inappropriate sexual behavior.  Peterson and Schlosser agreed that respondent exhibited "a high degree of sexual preoccupation and [a] high degree of . . . hypersexuality" during the period that he was confined as a juvenile.  Respondent indicated that he victimized

_____

[2]  Peterson provisionally diagnosed respondent as suffering from paraphilia not otherwise specified, but later retracted that diagnosis because of her belief that it was "subsumed" within the diagnosis of ASPD.

six children, including his sister, stepsister and two cousins, that were not accounted for in his juvenile delinquency history. Moreover, the crimes to which he pleaded guilty as an adult stemmed from allegations that he had forcibly raped one underage girl and threatened to kill her if she told, as well as engaging in sex with another underage girl. Peterson believed that respondent's sexual preoccupation was ongoing, as he had dozens of sexual partners in the months leading up to his incarceration and, while incarcerated, experienced increasingly persistent sexual thoughts that were driving him "nuts."

The question of "whether [respondent] had great difficulty in controlling his urges or simply decided to gratify them" may also be answered here without difficulty (Matter of State of New York v Donald DD., 24 NY3d at 188). Peterson, in fact, identified several instances that illustrated "respondent's lack of compunction and incapability to comprehend the inappropriateness of his conduct" (Matter of State of New York v Shannon S., 20 NY3d 99, 108 [2012], cert denied ___ US ___, 133 S Ct 1500 [2013]). Aside from the obvious fact that respondent has repeatedly victimized children despite sanctions for that behavior, respondent has expressed a lack of understanding as to what consensual sex is, most notably in 2012 when he described his strategy of verbally coercing women into having sex with him and found it "ridiculous" that anyone would view the ensuing sex as nonconsensual. He further stated that he fantasized about young girls and apparently saw no problem in lying about his age in order to obtain entry to "teen night" events, where he could meet "gullible" girls that made easy targets. Respondent has also failed to complete sex offender treatment despite numerous attempts, suggesting that he has not brought his urges under control, recognized them as destructive, or developed any meaningful strategies for dealing with them (compare Matter of State of New York v Frank P., 126 AD3d at 163).

Peterson had all of the above evidence before her, had interviewed respondent and reviewed his extensive institutional and treatment records, and used this information to form a "detailed psychological portrait of" respondent (Matter of State of New York v Donald DD., 24 NY3d at 188). That portrait shows an individual whose various diagnoses create a toxic mix that

have not only caused him to objectify women and feel "entitled to sex regardless of impact," but have also impelled him to satisfy those desires. Peterson saw no reason to believe that this situation would change in the future and had no difficulty opining that respondent had a mental abnormality that seriously impaired his behavioral control, particularly when coupled with his diagnosed penchant for substance abuse. In our view, nothing in Matter of State of New York v Donald DD. (supra) would bar her from doing so now. Thus, as the evidence otherwise supports the finding that respondent is a dangerous sex offender requiring civil confinement, and the interests of justice plainly do not support granting the motion to vacate, Supreme Court abused its discretion in doing so (see Matter of State of New York v Glenn T., 48 Misc 3d 521, 530-531 [2015]; compare Matter of State of New York v Gen C., 128 AD3d at 467-468).

Peters, P.J., Egan Jr. and Devine, JJ., concur.


McCarthy, J. (dissenting).

While we agree that the motion to vacate was properly considered, we disagree with the majority's conclusion that Supreme Court abused its discretion by granting the motion. The record provides insufficient evidence to establish that respondent suffered a mental abnormality within the meaning of Mental Hygiene Law article 10. Specifically, neither expert witness diagnosed respondent with an "independent mental abnormality diagnosis," because none of the conditions, diseases or disorders that were attributed to respondent bear a "necessary relationship to a difficulty in controlling one's sexual behavior" (Matter of State of New York v Donald DD., 24 NY3d 174, 191 [2014]). For that reason, we respectfully dissent.

Pursuant to Mental Hygiene Law § 10.03 (i), a mental abnormality is "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct." In Matter of State of New York v Donald DD.

(supra), the Court of Appeals further clarified that a diagnosis that "proves no sexual abnormality . . . cannot be the sole diagnosis that grounds [a finding of mental abnormality as defined by Mental Hygiene Law article 10]" (id. at 190). Specifically referring to the diagnosis at issue in that case, antisocial personality disorder (hereinafter ASPD), the Court determined that "ASPD is not a sexual disorder"; although ASPD is not an unreliable diagnosis, the Court identified the "problem" with the diagnosis as being that it "establishes only a general tendency toward criminality, and has no necessary relationship to a difficulty in controlling one's sexual behavior" (id. at 191 [internal quotation marks omitted]). Given ASPD's deficiency in this regard, and upon the Court's further consideration of the fact that there was no other "independent mental abnormality diagnosis," it concluded that the record was insufficient to support a finding that Donald DD. suffered from the requisite mental abnormality (id.).

Turning to our record, Trica Peterson, a psychologist, testified on behalf of petitioner. She cumulatively diagnosed respondent with ASPD, borderline personality disorder (hereinafter BPD), psychopathy,[1] cannabis abuse and alcohol abuse.[2] Peterson specifically identified ASPD, BPD and

---

[1] As Peterson acknowledged, psychopathy is not a diagnosis recognized by the current edition of the Diagnostic and Statistical Manual of Mental Disorders.

[2] The majority contends that Peterson testified that she withdrew a paraphilia not otherwise indicated diagnosis because she believed that "it was 'subsumed'" within the diagnosis of ASPD. Although Peterson was not perfectly precise with her use of the pronoun "it," a contextual reading of the record establishes that Peterson testified that respondent's behaviors were subsumed by ASPD, and this reading particularly makes sense given her conclusion that "[t]here [was] not sufficient evidence to . . . have a stand alone [p]araphilia [diagnosis]." Even if this were not clear based on context, ASPD is simply not a diagnosis that contains the diagnosis of paraphilia. The "essential features" of paraphilia include particular "sexual

psychopathy as personality disorders.  Peterson also agreed that she did not diagnose defendant with a sexual disorder. Relatedly, Peterson did not testify that any of the three diagnoses had any sexual component.

As an initial matter, we agree with the majority that Peterson and respondent's expert were in consensus in regard to respondent's diagnoses of ASPD and BPD to the extent that they testified that neither of those diagnoses identified respondent as someone necessarily predisposed to commit sex offenses. Further, Peterson — "whose usual role is to testify that a respondent suffers from a mental abnormality for [Mental Hygiene Law] article 10 purposes" — never identified ASPD, BPD or psychopathy[3] as having a "necessary relationship to a difficulty in controlling one's sexual behavior" (Matter of State of New York v Donald DD., 24 NY3d at 190-191).[4]  Finally, and unsurprisingly, Peterson did not identify cannabis abuse or alcohol abuse as a condition necessarily affecting a person's ability to control his or her sexual behavior.  In the absence of any evidence that respondent had a condition, disease or disorder that had a "necessary relationship to a difficulty in controlling one's sexual behavior," there is no "independent mental abnormality diagnosis[] to ground a finding of mental abnormality

---

fantasies [and] sexual urges," which are not features of ASPD (Matter of State of New York v Donald DD., 24 NY3d at 179 n 1).

[3]  Peterson described psychopathy as "an extreme form of [ASPD]" (see generally Matter of State of New York v Donald DD., 24 NY3d at 183 n 3).  If psychopathy is, as Peterson testified, only different in degree — but not in kind — from ASPD, it follows that psychopathy would also lack the requisite necessary relationship with control over one's sexual behavior.

[4]  Both experts testified at length regarding significant similarities between ASPD and BPD.  Notably, in explaining her conclusion that respondent had a mental abnormality, Peterson initially identified each ASPD, BPD and psychopathy but went on to refer to "personality disorders" generally at the point in her testimony where she described her "reason[ing]."

within the meaning of Mental Hygiene Law article 10," and Supreme Court correctly vacated its previous orders (Matter of State of New York v Donald DD., 24 NY3d at 191; see Matter of State of New York v Maurice G., 47 Misc 3d 692, 700-701 [Sup Ct, NY County 2015]; see generally Matter of State of New York v Gen C., 128 AD3d 467, 467 [2015]; but see Matter of State of New York v Glenn T., 48 Misc 3d 521, 527-531 [Sup Ct, Oneida County 2015]).

Further, the impulsivity and behavioral control problems that the majority identify are also hallmarks of ASPD,[5] as evidenced by the expert opinion regarding Donald DD. that ASPD predisposed him to "act[] upon the urges that he has . . . and neglect[] the laws that govern" (Matter of State of New York v Donald DD., 24 NY3d at 183 [internal quotation marks omitted]). In addition, the same expert not only connected such impulsivity to a general predisposition to commit crime, but also specifically identified such impulsivity as affecting Donald DD.'s sexual behavior (id.). That expert also specifically opined that, in fact, "Donald DD.'s ASPD predisposed him to commit conduct constituting a sex offense" (id.). Given the Court of Appeals' conclusion in Matter of State of New York v Donald DD. (supra) that the record was deficient as a matter of law to support such a finding, we are unpersuaded by the majority's contentions on this issue. Under the standard of Matter of State of New York v Donald DD. (supra) that constrains us, respondent's civil confinement is not justified.

Lynch, J., concurs.

---

[5] More particularly in terms of the constitutional principles that limit civil confinement, behavioral control and impulse deficits do not distinguish a respondent "from the dangerous but typical recidivist convicted in an ordinary criminal case" (Kansas v Crane, 534 US 407, 413 [2002]). Further, it is not a remarkable or a distinguishing fact that such deficits would affect a person's sexual behavior along with other behavior; it would only be remarkable if someone's general problems with impulse and behavioral control did not affect his or her sexual behavior.

ORDERED that the order is reversed, on the law, without costs, and motion denied.


ENTER:

Robert D. Mayberger
Clerk of the Court