# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**372**
**CA 14-00556**
PRESENT: CENTRA, J.P., CARNI, DEJOSEPH, CURRAN, AND SCUDDER, JJ.

IN THE MATTER OF STATE OF NEW YORK,
PETITIONER-RESPONDENT,

V                                              MEMORANDUM AND ORDER

NUSHAWN WILLIAMS, ALSO KNOWN AS SHYTEEK JOHNSON,
RESPONDENT-APPELLANT.
(APPEAL NO. 1.)

DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARK C. DAVISON OF COUNSEL), FOR RESPONDENT-APPELLANT.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (ALLYSON B. LEVINE OF COUNSEL), FOR PETITIONER-RESPONDENT.

CLIFFORD CHANCE US LLP, NEW YORK CITY (EVELYN KACHAJE OF COUNSEL), AND MAYO SCHREIBER, JR., DEPUTY DIRECTOR, THE CENTER FOR HIV LAW AND POLICY, FOR THE AMERICAN ACADEMY OF HIV MEDICINE, DR. JEFFREY BIRNBAUM/HEALTH EDUCATION ALTERNATIVES FOR TEENS, DR. ALWYN COHALL/PROJECT STAY, THE CENTER FOR HIV LAW AND POLICY, THE NATIONAL ALLIANCE OF STATE AND TERRITORIAL AIDS DIRECTORS, DR. NEAL RZEPKOWSKI, AND THE TREATMENT ACTION GROUP, AMICI CURIAE.

---

Appeal from an order of the Supreme Court, Chautauqua County (John L. Michalski, A.J.), entered March 3, 2014 in a proceeding pursuant to Mental Hygiene Law article 10. The order, among other things, directed that respondent be committed to a secure treatment facility designated by the Office of Mental Health.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: In appeal No. 1, respondent appeals from an order determining that he is a dangerous sex offender requiring confinement pursuant to Mental Hygiene Law § 10.07 (f). In appeal No. 2, he appeals from an order denying his motion pursuant to CPLR 5015 (a) seeking to vacate the order in appeal No. 1. Respondent was convicted in Chautauqua County in 1999 of two counts of rape in the second degree (Penal Law § 130.30) and one count of reckless endangerment in the first degree (§ 120.25) and, in Bronx County, of one count of reckless endangerment in the first degree (*id.*). The reckless endangerment convictions stem from respondent's respective pleas of guilty that he had unprotected sexual relations knowing that he was HIV-positive and that he did not inform his sexual partners that he

was HIV-positive.

We address first respondent's contentions in appeal No. 1.  As we did in a prior appeal in this case (*Matter of State of New York v Williams*, 92 AD3d 1274, 1275-1276), we reject respondent's contention that he was not a detained sex offender when petitioner filed the petition for civil management.  Contrary to respondent's contention, the determination in *People v Williams* (24 NY3d 1129, 1132) does not compel a different result.

We reject respondent's further contention that Supreme Court erred in denying his motion to change the venue from Chautauqua County to Bronx County on the ground that he could not receive a fair trial in Chautauqua County because of the notoriety associated with his criminal prosecution in 1999.  As we explained in a prior appeal, "[c]onclusory statements unsupported by facts are insufficient to warrant a change of venue . . . [, and] respondent failed to make any factual or evidentiary showing that he would be unable to obtain a fair trial in Chautauqua County or that a transfer was necessary for the convenience of the parties or witnesses" (*Matter of State of New York v Williams*, 92 AD3d 1271, 1271-1272).

Contrary to respondent's contention, we conclude that, viewing the evidence in the light most favorable to the petitioner (*see Matter of State of New York v John S.*, 23 NY3d 326, 348-349, *rearg denied* 24 NY3d 933), the evidence is legally sufficient to support the verdict that he has a mental abnormality that predisposes him to the commission of conduct constituting a sex offense and that results in him having serious difficulty controlling that conduct (*see* Mental Hygiene Law § 10.03 [i]).  Petitioner's two experts and respondent's expert agreed on the diagnosis of respondent with antisocial personality disorder (ASPD).  Petitioner's experts also diagnosed respondent with psychopathy, which they described as a condition wherein respondent has the traits of ASPD to an extreme degree. Respondent's expert testified that, although he did a psychopathy assessment, and his score was the same as one of petitioner's experts and higher than the other, he did not diagnose respondent with psychopathy because it is not a diagnosis contained in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.  Petitioner's experts each diagnosed respondent with sexual preoccupation which, although not sufficient by itself to satisfy the criteria for mental abnormality (*see Matter of State of New York v Kenneth W.*, 131 AD3d 872, 873), may nevertheless be part of a " 'detailed psychological portrait' " that can be used to establish mental abnormality (*Matter of State of New York v Richard TT.*, 132 AD3d 72, 78, *appeal dismissed* 26 NY3d 994).  Finally, each of petitioner's experts provided an additional diagnosis that the other did not:  one expert diagnosed respondent with polysubstance abuse, and the other expert diagnosed him with sexual sadism.  The latter expert had considered the diagnosis of sexual sadism when he prepared his report two years prior to the trial, but did not actually make the diagnosis until he reviewed the trial testimony of a victim regarding respondent's violent and degrading treatment of her during an attempted rape when she was 13 years old.  The evidence also

established that, in 1996, after he was advised that he was HIV-positive, respondent, using charm and/or force, engaged in sexual relations with 42 females, both adult women as well as girls under the age of 14 years old, 13 of whom contracted the virus. Two inmates and two correction officers testified that, inter alia, respondent stated that he intended to continue that behavior upon his release, specifically referencing underage girls. Furthermore, respondent failed to complete sex offender treatment and had a poor prison disciplinary record prior to 2006.

Even assuming, arguendo, that the diagnosis of sexual sadism is not supported by legally sufficient evidence, as respondent contends, we nevertheless conclude that the diagnoses of ASPD, psychopathy, sexual preoccupation, and polysubstance abuse, together with respondent's failure to complete sex offender treatment, his poor prison disciplinary record, his pattern of sexual misconduct, both with respect to the use of force and targeting underage girls, and his stated intention to commit further sex offenses create a " 'detailed psychological portrait' " of respondent that is legally sufficient to support the verdict (*Richard TT.*, 132 AD3d at 78; *see John S.*, 23 NY3d at 348-349; *Matter of Wright v State of New York*, 134 AD3d 1483, 1485-1486; *cf. Matter of State of New York v Donald DD.*, 24 NY3d 174, 190-191). Indeed, we conclude that respondent is not simply a "dangerous but typical recidivist convicted in an ordinary criminal case" (*Wright*, 134 AD3d at 1487 [internal quotation marks omitted]; *see Donald DD.*, 24 NY3d at 189).

We reject respondent's contention that the court abused its discretion in denying his motions seeking a mistrial based upon the testimony of a witness regarding respondent's violent attempted rape of her when she was 13 years old. Respondent alleged in his first motion that he was prejudiced by the undue surprise of the testimony of that witness. We reject that contention inasmuch as the name of the witness appeared on the witness list and, although petitioner had not provided an offer of proof with respect to the witness pursuant to the court's determination of respondent's motion in limine, respondent did not object to the testimony until the court called a recess. Thus, we conclude that the testimony of the witness did not constitute unfair surprise warranting a mistrial (*cf. People v Shaulov*, 25 NY3d 30, 35-36; *Hannon v Dunkirk Motor Inn*, 167 AD2d 834, 834-835). We conclude that the court did not abuse its discretion in denying respondent's subsequent motion seeking a mistrial on the ground that his defense was discredited because respondent's counsel stated in his opening statement that there would be no evidence that respondent used force when engaging in sexual activity. The expert's report supporting the petition referenced respondent's use of force with respect to other women, and thus respondent did not rely on assurances from petitioner that there would be no evidence that respondent had used such force (*cf. Shaulov*, 25 NY3d at 35-36).

We reject respondent's contention that he was denied a fair trial by the improper admission of hearsay evidence through the testimony of one of the petitioner's experts. We note initially that, although respondent made a motion in limine seeking to prohibit any testimony

based on hearsay evidence, the court determined that it would have to make determinations as such testimony was sought to be admitted, and respondent failed to object to the testimony at trial (*see generally Matter of State of New York v Nervina*, 120 AD3d 941, 942, *lv granted* 24 NY3d 1065).  The expert testified that, in determining respondent's diagnoses, he considered a presentence investigation, which included information that respondent was charged with a felony offense when he was 17 or 18 years old, and he also considered materials from a police investigation, which included information regarding one of the women whom respondent allegedly forced to have sex.  We conclude that the evidence based on hearsay met the minimum requirements of reliability and relevance (*see Matter of State of New York v Floyd Y.*, 22 NY3d 95, 109).  We also reject respondent's contention that he was denied a fair trial by misconduct during summation by petitioner's counsel.  Respondent failed to object to the majority of the alleged instances of misconduct, and thus failed to preserve for our review his contention with respect to those instances (*see Matter of State of New York v Gierszewski*, 81 AD3d 1473, 1474, *lv denied* 17 NY3d 702).  Although we agree with respondent that the attorney made some inappropriate remarks, we conclude that "none of those remarks was 'so egregious or prejudicial as to deny respondent his right to a fair trial' " (*id.*).

Contrary to respondent's contention, we conclude that he was not denied meaningful representation, as assessed by the standards that are applicable to counsel in criminal proceedings (*see Matter of State of New York v Campany*, 77 AD3d 92, 98-99, *lv denied* 15 NY3d 713).  Respondent contends that there was no strategic or legitimate explanation for his counsel to challenge the validity of respondent's HIV-positive diagnosis or to present evidence regarding the limited risk of transmission of that virus by respondent to others based upon the medical advances since respondent's conviction in 1999.  We reject that contention and conclude that respondent's attorney may have decided, legitimately, to avail himself of those approaches in light of the report of one of petitioner's experts, submitted in support of the petition, who referenced respondent's condition as a "highly infectious disease."  The record establishes that respondent's attorney provided zealous representation both before and during the trial, and we therefore conclude that he received the meaningful representation to which he was entitled (*see Matter of State of New York v Carter*, 100 AD3d 1438, 1439; *Campany*, 77 AD3d at 99-100).

We reject the contention of respondent in appeal No. 2 that the court erred in denying his motion pursuant to CPLR 5015 (a) seeking to vacate the order determining that he is a dangerous sex offender requiring confinement.  Contrary to respondent's contention, the decision of the Court of Appeals in *Donald DD.* (24 NY3d 174) does not compel the conclusion that he does not have a mental abnormality as defined by Mental Hygiene Law § 10.03 (i).

Entered:  May 6, 2016                      Frances E. Cafarell
                                           Clerk of the Court