Matter of State of New York v Marcello A. (2020 NY Slip Op 01067)





Matter of State of New York v Marcello A.


2020 NY Slip Op 01067


Decided on February 13, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
BETSY BARROS, JJ.


2017-01965
 (Index No. 16768/14)

[*1]In the Matter of State of New York, respondent,
v
Marcello A. (Anonymous), appellant.


Mental Hygiene Legal Service, Garden City, NY (Michael D. Neville, Arthur A. Baer, and Dennis B. Feld of counsel), for appellant.
Letitia James, Attorney General, New York, NY (Andrew W. Amend and Mark S. Grube of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Marcello A., a sex offender allegedly requiring civil management, Marcello A. appeals from an order of the Supreme Court, Suffolk County (C. Randall Hinrichs, J.), dated January 23, 2017. The order, upon a finding, made after a nonjury trial, that Marcello A. suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03(i), and upon a determination, made after a dispositional hearing, that he is a sex offender requiring strict and intensive supervision and treatment, in effect, granted the petition and directed that he be subject to a regimen of strict and intensive supervision and treatment.
ORDERED that the order is affirmed, without costs or disbursements.
In August 2014, the State of New York commenced this proceeding pursuant to Mental Hygiene Law article 10 for the civil management of the appellant. Prior to trial, the Supreme Court conducted a Frye hearing (see Frye v United States, 293 F 1013 [DC Cir]) to determine whether the Hare Psychopathy Checklist-Revised (hereinafter the PCL-R), an instrument used to measure psychopathy, had achieved general acceptance in the psychiatric and psychological communities. At the conclusion of the hearing, the court determined that the PCL-R had achieved general acceptance in the psychiatric and psychological communities, and permitted testimony regarding that instrument.
At a nonjury trial, the State presented the testimony of two expert witnesses: psychologists Frances Charder and John Alan Thomassen. Charder diagnosed the appellant with "a voyeuristic disorder, as well as antisocial personality disorder with psychopathy." Thomassen diagnosed the appellant with "[o]ther specified personality disorder with antisocial traits" and "a condition of psychopathy." Both of the State's experts opined that the appellant is an individual with a mental abnormality as that term is defined in Mental Hygiene Law § 10.03(i).
At the trial, the appellant presented the testimony of his own expert, psychologist Eric N. Schlosser. Schlosser diagnosed the appellant with "[p]ersonality disorder with antisocial [*2]features." Schlosser opined that the appellant was not an individual with a mental abnormality as that term is defined in Mental Hygiene Law § 10.03(i).
In a written decision dated December 22, 2016, the Supreme Court credited the testimony of the State's two experts and determined that the State had sustained its burden of demonstrating that the appellant was an individual with a mental abnormality as that term is defined in Mental Hygiene Law § 10.03(i). After a dispositional hearing, the court determined that the appellant is a sex offender requiring strict and intensive supervision and treatment. In a subsequent order dated January 23, 2017, the court, in effect, granted the petition and directed that the appellant be subject to a regimen of strict and intensive supervision and treatment.
On appeal, the appellant contends that the evidence adduced at the trial was legally insufficient to support the Supreme Court's determination that the appellant was an individual with a mental abnormality as that term is defined in Mental Hygiene Law § 10.03(i). This contention is without merit.
"Mental Hygiene Law article 10 is designed to reduce the risks posed by, and to address the treatment needs of, sex offenders who suffer from mental abnormalities that predispose them to commit repeated sex crimes" (Matter of State of New York v Dennis K., 27 NY3d 718, 726; see Mental Hygiene Law §§ 10.01[b]; 10.03[i]). The law defines "mental abnormality" as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03[i]). Accordingly, to meet this statutory definition, "not only must the State establish by clear and convincing evidence the existence of a predicate condition, disease or disorder,' it must also link that condition, disease or disorder' to a person's predisposition to commit conduct constituting a sex offense and to that person's serious difficulty in controlling such conduct'" (Matter of State of New York v Dennis K., 27 NY3d at 726).
Here, viewing the evidence in the light most favorable to the State (see Matter of State of New York v John S., 23 NY3d 326, 348-349), it was legally sufficient to support the verdict since there is a valid line of reasoning by which the factfinder could conclude that the appellant was an individual with a mental abnormality as that term is defined in Mental Hygiene Law § 10.03(i) (see Matter of State of New York v Dennis K., 27 NY3d at 750-752; Matter of State of New York v Williams, 139 AD3d 1375, 1377; Matter of State of New York v Jerome A., 137 AD3d 557, 557-558).
The appellant further argues that the Supreme Court's mental abnormality determination was against the weight of the evidence. As an initial matter, we agree with the appellant that Charder's testimony regarding her diagnosis of a voyeuristic disorder should not have been credited. Charder admitted that her diagnosis of a voyeuristic disorder was inconsistent with the diagnostic criteria contained in section 302.82 of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. Although her decision to apply an alternative definition of voyeuristic disorder does not necessarily render this diagnosis insufficient to establish a mental abnormality (see Matter of State of New York v Shannon S., 20 NY3d 99, 105-106), Charder failed to clearly set forth the diagnostic criteria that she utilized in diagnosing the appellant under this alternative definition of voyeuristic disorder (see Matter of State of New York v Hilton C., 158 AD3d 707, 709), and she otherwise failed to explain the basis of her opinion that certain conduct attributed to the appellant was "voyeuristic," thus rendering such testimony conclusory (see generally Santiago v Riccelli Enters., Inc., 173 AD3d 1237, 1237-1238; Brown Bark I, L.P. v Imperial Dev. & Constr. Corp., 65 AD3d 510, 512; Reyes v City of New York, 29 AD3d 667, 667-668; Itzkowitz v King Kullen Grocery Co., Inc., 22 AD3d 636, 637-638). Notably, the other two experts who testified at the trial, including the State's own expert, Thomassen, both disagreed with Charder's diagnosis of a voyeuristic disorder. Under the circumstances, Charder's testimony regarding her diagnosis of a voyeuristic disorder should not have been credited.
However, we nevertheless conclude that the verdict was supported by a fair [*3]interpretation of the evidence. Charder also diagnosed the appellant with antisocial personality disorder with psychopathy (cf. Matter of State of New York v Dennis K., 27 NY3d at 750; Matter of State of New York v Williams, 139 AD3d at 1377; Matter of State of New York v Jerome A., 137 AD3d at 557-558). Thomassen similarly diagnosed the appellant with other specified personality disorder with antisocial traits and a condition of psychopathy. Both of the State's expert witnesses linked these respective diagnoses to the appellant's predisposition to engage in conduct constituting the commission of sex offenses (see Matter of State of New York v Dennis K., 27 NY3d at 744). In addition, each of the State's expert witnesses provided " [a] detailed psychological portrait'" of the appellant that demonstrated that he had serious difficulty in controlling his sex-offending conduct (id. at 751, quoting Matter of State of New York v Donald DD., 24 NY3d 174, 188). In reaching this conclusion, both experts relied on, among other things, statements made by the appellant indicating that he was "unable to control" his sexual urges despite the prospect of adverse legal consequences (see Matter of State of New York v Dennis K., 27 NY3d at 751). Although the appellant's expert witness disagreed in many material respects with the opinions of the State's expert witnesses, such conflicting expert testimony merely amounted to "a battle of the experts" (Matter of State of New York v Raul L., 120 AD3d 52, 60; see Matter of State of New York v Shannon S., 20 NY3d at 106-107). Ultimately, the Supreme Court's determination that the State demonstrated, by clear and convincing evidence, that the appellant was an individual with a mental abnormality within the meaning of Mental Hygiene Law § 10.03(i) was warranted by the facts, and we decline to disturb it (see Matter of State of New York v Kaysheem P., 175 AD3d 692; Matter of State of New York v James N., 171 AD3d 930, 931; Matter of State of New York v Raul L., 120 AD3d at 60).
The appellant next takes issue with the Supreme Court's determination that the PCL-R had achieved general acceptance in the psychiatric and psychological communities, and the court's decision to permit expert testimony with respect to that instrument. These contentions are without merit.
"New York courts permit expert testimony based on scientific principles or procedures only after the principle, procedure, or theory has gained general acceptance in the relevant scientific field" (Matter of State of New York v Hilton C., 158 AD3d at 709; see People v Wesley, 83 NY2d 417, 422; Frye v United States, 293 F 1013). "Under the Frye standard, the burden of proving general acceptance rests upon the party offering the disputed expert testimony" (Matter of State of New York v Hilton C., 158 AD3d at 709; see Cumberbatch v Blanchette, 35 AD3d 341, 342-343; Zito v Zabarsky, 28 AD3d 42, 44). The test of reliability is "not whether a particular procedure is unanimously indorsed by the scientific community, but whether it is generally acceptable as reliable" (People v Middleton, 54 NY2d 42, 49). "Frye is not concerned with the reliability of a certain expert's conclusions, but instead with whether the [expert's] deductions are based on principles that are sufficiently established to have gained general acceptance as reliable" (Lipschitz v Stein, 65 AD3d 573, 576 [internal quotation marks omitted]). The Frye test asks "whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally" (People v Wesley, 83 NY2d at 422; see People v Wernick, 89 NY2d 111, 115-116; Matter of State of New York v Hilton C., 158 AD3d at 709).
Here, the evidence adduced at the Frye hearing demonstrated that the PCL-R has enjoyed long and widespread use within the psychological and psychiatric communities as a tool to measure psychopathy. Even the expert witness called by the appellant to testify at the Frye hearing acknowledged that the PCL-R is generally accepted for this purpose. Although there was evidence adduced at the hearing indicating that the PCL-R has been criticized for a lack of "inter-rater reliability" and having an "allegiance effect," the evidence adduced at the hearing showed that such problems could be effectively mitigated through proper training. Similarly, although there was evidence indicating that the PCL-R was not designed to function as a direct and stand-alone test of whether an individual has a mental abnormality within the meaning of the statute, expert testimony established that it could nevertheless "contribute to an assessment of the presence of mental abnormality."
In sum, the record supports the Supreme Court's conclusion that the State established that the PCL-R has achieved general acceptance in the psychiatric and psychological communities [*4]so as to make expert testimony on that instrument admissible (cf. Matter of State of New York v Ian I., 127 AD3d 766, 767-768). The issues identified by the appellant relating to the reliability of the PCL-R and the potential for its misuse are "factor[s] relevant to the weight to be attributed" to such expert testimony (Matter of State of New York v Shannon S., 20 NY3d at 107). As the Court of Appeals has stated in a similar context: "Any professional debate over the viability and reliability of [the PCL-R] is subject to the adversarial process which, by vigorous cross-examination, would expose the strengths and weaknesses of the professional medical opinions offered' in reaching a considered legal determination as to whether a respondent suffers a mental abnormality, as defined by statute" (id., quoting Brown v Walters, 599 F3d 602, 612 [7th Cir]).
The appellant's remaining contentions are without merit.
BALKIN, J.P., COHEN, MILLER and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court