Matter of State of New York v David J. (2018 NY Slip Op 08717)





Matter of State of New York v David J.


2018 NY Slip Op 08717


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

524354

[*1]In the Matter of STATE OF NEW YORK, Respondent,
v
DAVID J., Appellant.

Calendar Date: November 16, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Devine and Clark, JJ.


George J. Hoffman Jr., East Greenbush, for appellant.
Barbara D. Underwood, Attorney General, Albany (Jennifer L. Clark of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Supreme Court (O'Shea, J.), entered June 16, 2016 in Chemung County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
In 1990, respondent was convicted of rape in the first degree and was sentenced to a prison term of 12½ to 25 years. In July 2015, as respondent was approaching his maximum sentence, petitioner commenced this Mental Hygiene Law article 10 proceeding for his confinement to a secure treatment facility as a dangerous sex offender. Respondent was represented by counsel from Mental Hygiene Legal Service (hereinafter MHLS). At a pretrial proceeding, respondent's counsel (hereinafter the first attorney) advised Supreme Court that he previously had a role in respondent's underlying criminal case, as he had then been an Assistant District Attorney. In this capacity, the first attorney had responded to an omnibus motion and been present at sentencing. Respondent consented to the first attorney's representation and waived his right to a probable cause hearing. Respondent thereafter revoked his consent to representation by the first attorney and requested appointment of substitute counsel pursuant to County Law article 18-B (see County Law § 722). Supreme Court denied respondent's request in part, and instead assigned substitute counsel from MHLS (hereinafter the second attorney). Respondent consented to representation by the second attorney and stipulated that he qualified as a detained sex offender (see Mental Hygiene Law § 10.03 [g]). The matter proceeded to trial in May 2016. The jury rendered a verdict finding that respondent suffers from a mental abnormality within the meaning of Mental Hygiene Law § 10.03 (i). Shortly thereafter, the court conducted a dispositional hearing, determined that respondent was a dangerous sex offender requiring confinement in a secure treatment facility, and issued an order directing his confinement (see Mental Hygiene Law § 10.03 [e]). Respondent appeals.
We find that the jury verdict was supported by legally sufficient evidence. A dangerous sex offender may be confined when he or she "suffer[s] from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; see Matter of State of New York v Dennis K., 27 NY3d 718, 726 [2016], cert denied ___ US ___, 137 S Ct 579 [2016]; Matter of State of New York v David HH., 147 AD3d 1230, 1233-1234 [2017], lv denied 29 NY3d 913 [2017]). It is the petitioner's burden to prove, by clear and convincing evidence, that the respondent has a mental abnormality (see Mental Hygiene Law § 10.07 [d]), which is defined as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]; see Matter of Christopher PP. v State of New York, 151 AD3d 1334, 1336 [2017], lv denied 30 NY3d 903 [2017]).
Petitioner presented the expert testimony and written report of Susan Cox, a licensed psychologist with the Office of Mental Health, who had been engaged in the evaluation of respondent as part of the initial Mental Hygiene Law article 10 petition. As noted in the evaluation, respondent's criminal history includes convictions for a total of five sex offenses and one sexually-related arrest. At the age of 15, respondent was charged as a juvenile for entering a neighbor's home and stealing women's undergarments. At age 28, he pleaded guilty to sexual misconduct for vaginally penetrating a woman against her will. Five days after his release for that offense, respondent vaginally raped an 84-year-old woman, and later pleaded guilty to sexual abuse in the first degree. While on parole for that offense, at the age of 34, respondent was convicted of unlawful imprisonment in the second degree for attempting to take the shoe off a 10-year-old girl. At 37 years old, respondent committed the underlying offense, raping a 41-year-old woman who was watching her young grandchildren in a public park in the daytime. At least six children observed the rape. According to the police report summarized in the evaluation, shortly after his arrest, respondent admitted to raping the woman and stated, "I need some help for my psychiatric problems, and I can't think straight or control my emotions . . . and I just lost control when I [saw] the woman." Respondent thereafter pleaded guilty to rape in the first degree. However, following his incarceration upon this conviction, respondent has maintained his innocence and denies having committed these sexual offenses. During the interview conducted as part of the evaluation, respondent often blamed his mother for his convictions, stating that she was able to influence the decisions of police and judges. During the term of his confinement, respondent's disciplinary infractions included four tickets arising from letters sent to female prison staff, in which he asked them to perform sexual acts and made inappropriate comments about their feet. He has denied writing these letters.
At trial, Cox opined that respondent suffers from delusional disorder with persecutory and grandiose theme with bizarre content, antisocial personality disorder, fetish disorder, sexual preoccupation and hypersexuality. She explained that these conditions of psychopathy with sexual deviancy and sexual preoccupation are predictive of sexual recidivism in the community. Her interview with respondent revealed his continued sexual preoccupation, hypersexuality and inability to control his emotions and actions. Cox further noted the increasingly violent nature of respondent's sex offenses and his failure to engage in sex offender treatment while incarcerated. Based upon her evaluation, Cox concluded that respondent suffers from a mental abnormality (see Mental Hygiene Law § 10.03 [i]).
Petitioner retained a second licensed psychologist to conduct an independent evaluation, Stuart Kirschner, who also testified. Kirschner similarly diagnosed respondent with a fetish for women's feet and undergarments, psychotic disorder, schizophrenia, thinking impairment, antisocial personality disorder and unspecified paraphilic disorder. He further opined that there is no indication that respondent's sex drive will decrease despite his age and that the circumstances of respondent's past sex offenses demonstrate his inability to control his behavior. In light of his evaluation, Kirschner also concluded that respondent suffers from a [*2]mental abnormality within the meaning of Mental Hygiene Law § 10.03 (i). Respondent did not present expert testimony.
Contrary to respondent's assertion, the two expert opinions that he suffers from a mental abnormality were not impermissibly based solely on a diagnosis of antisocial personality disorder. Each opinion was instead based upon respondent's combined diagnoses (see Matter of State of New York v Dennis K., 27 NY3d at 733; Matter of State of New York v Donald DD., 24 NY3d 174, 190 [2014]; Matter of State of New York v Richard TT., 132 AD3d 72, 76-77 [2015], affd 27 NY3d 718 [2016], cert denied ___ US ___, 137 S Ct 836 [2017]). Kirschner opined that "it's the combination of the various disorders that . . . sets the stage for [respondent's] sexual re-offending." Cox similarly opined that the interaction of respondent's disorders, fetishes and hypersexuality make it more "likely [that he would] re-offend." Upon this record, there was a valid line of reasoning by which the jury could conclude that respondent suffers from a mental abnormality (see Mental Hygiene Law § 10.03 [i]; Matter of State of New York v Shannon S., 20 NY3d 99, 108 [2012], cert denied 568 US 1216 [2013]; Matter of Christopher PP. v State of New York, 151 AD3d at 1337-1338; Matter of State of New York v Kenneth BB., 93 AD3d 900, 901 [2012]). Accordingly, we find no basis upon which to disturb the jury verdict.
Next, respondent contends that he was denied the effective assistance of counsel on the basis that his first attorney's involvement in his underlying criminal action as the assigned Assistant District Attorney presented a conflict of interest. Initially, "while Mental Hygiene Law article 10 proceedings are civil rather than criminal, and . . . ineffective assistance of counsel may only be considered in civil litigation if extraordinary circumstances are present, the indefinite and involuntary nature of confinement that may result in this type of proceeding constitutes such an extraordinary circumstance" (Matter of State of New York v Timothy BB., 113 AD3d 18, 23 [2013], appeal dismissed 23 NY3d 941 [2014]; see Matter of State of New York v Campany, 77 AD3d 92, 98 [2010], lv denied 15 NY3d 713 [2010]). Where, as here, an ineffective assistance of counsel claim is based upon an alleged conflict of interest, the court must first determine whether such a conflict of interest existed (see People v Konstantinides, 14 NY3d 1, 10 [2009]; People v Abar, 99 NY2d 406, 409 [2003]). The burden is on the person claiming such conflict of interest to demonstrate that his or her defense was in fact affected by the conflict of interest or that the conflict "operated on the representation" (People v Ortiz, 76 NY2d 652, 657 [1990] [internal quotation marks and citation omitted]; see People v Serrano, 99 AD3d 1105, 1107 [2012], lv denied 20 NY3d 1014 [2013]).
We find that the first attorney's prior employment with the District Attorney's office presented no conflict of interest. The role of an MHLS attorney within the context of Mental Hygiene Law article 10 proceedings is akin to that of a Public Defender. In this regard, "[t]he danger that previously obtained confidential information will become available to the prosecution simply does not exist when a District Attorney becomes a Public Defender" (People v Sawyer, 83 AD2d 205, 208 [1981], affd 57 NY2d 12 [1982], cert denied 459 US 1178 [1983]; see People v Clevenger, 189 Misc 2d 80, 81 [App Term, 2d Dept 2001]). Put another way, it is established that there is an inherent conflict of interest where "a defense attorney who initially represented a defendant and during the pendency of the criminal proceeding then joined the District Attorney's office" (People v Abar, 99 NY2d at 410). However, the concerns that arise in that scenario are not present here; there is no indication in the record that the first attorney "obtained any information about [respondent] through [his] prior employment as an [A]ssistant [D]istrict [A]ttorney that compromised [his] representation of him" as counsel assigned from MHLS (People v Abar, 99 NY2d at 410; compare People v Shinkle, 51 NY2d 417, 420 [1980]).[FN1]
To the extent that respondent contends that the first attorney's representation nevertheless presented an appearance of impropriety, we find that the substitution of the second attorney from MHLS properly remedied any potential concerns. Where, as here, there is an [*3]"absence of actual prejudice or a substantial risk thereof, the appearance of impropriety alone is not sufficient to require disqualification" (Matter of Stephanie X., 6 AD3d 778, 780 [2004]; see Matter of Tina X. v John X., 138 AD3d 1258, 1261 [2016]). Even where an attorney is disqualified from representation, such "does not require the disqualification of all other attorneys employed in the same public sector" (Matter of Stephanie X., 6 AD3d at 780). Here, it also bears noting that respondent consented on the record to the second attorney's representation. Accordingly, we find no error in Supreme Court's substitution of the second attorney from MHLS.
Upon review, we find that the second attorney provided "meaningful representation," as he vigorously advocated for respondent at trial, filed various motions, engaged in cross-examination, and made appropriate objections (People v Baldi, 54 NY2d 137, 147 [1981]; see generally People v Garrow, 147 AD3d 1160, 1162 [2017])[FN2]. Likewise, we find no merit in respondent's contention that his request for substitute counsel pursuant to County Law article 18-B was improperly denied (see County Law § 722). In this regard, Mental Health Law § 10.06 (c) provides that "[t]he court shall appoint [MHLS] if possible." Finally, respondent's contention that Supreme Court erred in declining to permit him to proceed pro se is not preserved for our review. Respondent withdrew his request prior to the appointment of the second attorney and did not renew it thereafter.
McCarthy, Egan Jr., Devine and Clark, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: We further note that the first attorney promptly informed respondent and Supreme Court of his limited participation as an Assistant District Attorney in respondent's underlying 1990 criminal conviction.

Footnote 2: At oral argument, respondent asserted that the second attorney's failure to obtain an expert who could provide him a favorable psychological report constituted ineffective assistance. However, this was the first time that this argument was presented, and he waived any potential issue in this regard "by [his] failure to brief it on appeal" (People v Lindahl, 33 AD3d 1125, 1126 n [2006]).